**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANA WATSON,<br><br>Plaintiff,<br>v.<br><br>CROSSROADS HOSPICE OF ST. LOUIS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:24-cv-646-SEP |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment, Doc. [102]. For the reasons set forth below, the motion is granted.

**BACKGROUND**

On May 9, 2024, Plaintiff filed suit against Defendant Crossroads Hospice of St. Louis, alleging employment discrimination on the bases of race and disability, as well as retaliation and harassment. *See* Doc. [1] at 4-5. On January 14, 2025, she filed an Amended Complaint, Doc. [30]. Plaintiff alleges employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq.; the Rehabilitation Act of 1973, 29 US.C. §§ 701, et seq.; Section 1981 of the Civil Rights Act of 1866; and Title VII of the Americans with Disabilities Act. She also asserts claims for wrongful termination and retaliation.

Plaintiff was hired by Crossroads on February 28, 2022, and terminated on May 24, 2024, within a 90-day probationary period. Doc. [104] ¶¶ 1, 67.[1] Plaintiff's job description required that she "[d]emonstrate a professional approach with staff, physicians, significant others, patients, and others," "[c]omply with policies and professional standards," "work well with others," and "maintain a positive, growth-oriented attitude." Doc. [104-7] at 5-6; Doc. [104] ¶¶ 5-6. The parties disagree about whether she met that standard. For example, they offer starkly different accounts of meetings that occurred on April 20, 2022, April 29, 2022, and May

[1] Although Plaintiff disputes some aspects of ¶ 67 of Defendant's SUMF, *see* Doc. [111-1] at 15-16, she nowhere disputes the date of her termination or that she was still within the 90-day probationary period. Those facts are therefore deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); E.D. Mo. L.R. 4.01(E).

20, 2022. On Defendant's account, Plaintiff was inappropriately argumentative and made others uncomfortable at the first two meetings, and then on May 20th she was insubordinate; she violated the company's confidentiality policy; and she yelled and slammed a door. *See* Docs. [104] ¶¶ 14-16, 22-26, 42, 46-48, 50, 53; [104-11] at 1; [104-12] at 1; [104-16]; [104-21] at 1; [117] ¶ 12. According to Plaintiff, her conduct at the first two meetings was perfectly appropriate, and on May 20th, she did not violate any policy or yell; rather, she objected to an improper termination of a colleague and had a panic attack. *See* Docs. [1-3] at 3-4; [17-1] at 13; [104-3] at 208:13-16, 225:1-4, 254:1-24, 325:19-328:21.

After the events of May 20th, Plaintiff communicated about her situation by several methods. Doc. [104] ¶¶ 60-64.[2] For example, that evening, she left a voicemail with the corporate compliance hotline explaining that she had "called out a couple things today" and worried about retaliation because other employees disagreed with her. *Id.* ¶ 60. And at 6:44 a.m. the next morning, she emailed DeAnna Looper, Clinical and Regulatory Adviser to the Board, with complaints about her supervisor, Colleen Dietmeyer, "downplay[ing] [her] skill set," and "showing favoritism and being down right hostile" to her since her first week with the company. Doc. [104-25] at 2. Four days after the May 20th incident, Plaintiff was terminated. Doc. [104-28]. Later that day, she sent an email to Shelly Spriggs, Human Resources Director, noting that she still expected a follow up to her complaint of May 20th, claiming that she had been terminated "when [she] spoke up about [discrimination against her] and other racial discrimination that was going on," and reporting that she "suffered from an ADA." Doc. [104-24] at 2. Defendant maintains that Plaintiff's termination was for misconduct, not on account of race or disability or in retaliation for protected activity. Doc. [32] ¶ 12; Doc. [104] ¶¶ 5-6, 67.

## Legal Standard

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

[2] Although Plaintiff purports to dispute the allegations in ¶¶ 60-64, *see* Doc. [111-1] at 14-15, her responses do not controvert the facts alleged by Defendant. Those facts are therefore deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); E.D. Mo. L.R. 4.01(E).

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quotation marks omitted). The non-movant must then "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013) (citing *Davis v. United States Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004)).

## Discussion

Plaintiff alleges (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866, (2) disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA) and Section 504 of the Rehabilitation Act of 1973, and (3) retaliation in violation of Title VII. Doc. [30] at 1-2. All such claims require Plaintiff to make a prima facie case before the evidentiary burden shifts to Defendant. Because Plaintiff fails to make a prima facie case for any of her claims, Defendant is entitled to summary judgment on all of them.

### I. Plaintiff has not made a prima facie case of race discrimination.

Both Title VII and 42 U.S.C. § 1981 make it unlawful for a covered employer to discharge or discriminate against someone in the workplace because of her race or skin color, and courts apply the same legal analysis to discrimination claims under both statutes. *See Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8th Cir. 2023). To survive a motion for summary judgment, a plaintiff must either produce direct evidence of discrimination or create an inference of discrimination or retaliation under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *See Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014). Because Plaintiff presents no direct evidence of discrimination, the Court analyzes her claims under the *McDonnell Douglas* framework.

The first step is for a plaintiff to "make a prima facie case of discrimination or retaliation." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015). To make her prima facie case of race discrimination, Plaintiff must show by a preponderance of the evidence that "she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Yang*, 79 F.4th at 964 (citation omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).[3]

Defendants argue that Plaintiff fails to meet her *prima facie* burden because she points to no admissible evidence that she was meeting her employer's legitimate expectations. *Yang*, 79 F.4th at 964. To make that prima facie showing, "Plaintiff must . . . do more than allege that she believed she was meeting expectations or that other employees thought she was a good employee." *Cherry v. Ritenour Sch. Dist.*, 253 F. Supp. 2d 1085, 1095 (E.D. Mo. 2003). She must "show by independent evidence in the summary judgment record that she was actually performing her job at the level specified by defendant." *Id.* (citation modified).

Plaintiff's opposition acknowledges that, to defeat summary judgment, she must "show[] and point[] to documents, depositions, admissions, etc., in the record supplied and authenticated by the defendants either through their own admission or through discovery to show facts are disputed." Doc. [110] at 9; *see also id.* at 1 ("opponents [of summary judgment] must show a dispute ***by citing contradictory evidence*** or proving the movant's evidence isn't admissible") (emphasis added). Defendant's summary judgment briefing provides clear notice that she needed to produce evidence that she was meeting her employer's legitimate expectations. *See* Doc. [103] at 3-6. Plaintiff even accurately cites that argument toward the beginning of her opposition: "Defendants stated Plaintiff: cannot establish a prima facie case of race discrimination **in that she was not meeting Crossroads' legitimate expectations** . . . ." Doc. [110] at 3 (emphasis added). The Court has no doubt, therefore, that Plaintiff understood what was required to defeat summary judgment on this point. Yet she points to no evidence of

[3] The Court acknowledges the tension between the preponderance standard articulated in the *McDonnell Douglas* case law and the conventional standard for a non-movant to defeat summary judgment. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322–23 (2025) (Thomas, J., concurring) ("In my view, requiring a plaintiff to satisfy the *McDonnell Douglas* framework—as this Court has described it—requires a plaintiff to prove too much at summary judgment."). In this particular case, that tension has no practical significance because Plaintiff fails to point to enough evidence to clear even the lower bar—i.e., to allow a reasonable factfinder to find in her favor. *See Farver*, 931 F.3d at 811.

satisfactory job performance in her opposition to summary judgment. At most, she argues that there are holes in Defendant's evidence. *See* Doc. [110] at 14 (concluding that "there are contradictions or implausibility's [sic] in the defendant's stories, the differing accounts and evidence create genuine disputes of material facts" and referring to no affirmative evidence going to her job performance). She does not even point to portions of her own sworn testimony that might be relevant to her job performance.

Denials alone are insufficient to defeat summary judgment. *See Farver*, 931 F.3d at 811. Nowhere is their insufficiency clearer than here, where an affirmative evidentiary showing is explicitly required. By failing to point to any evidence that she was meeting her employer's legitimate expectations, Plaintiff fails to clear the first hurdle to getting her race discrimination claim to a jury. *Yang*, 79 F.4th at 964.[4]

In the paper exhibits attached to her opposition, the Court located two pieces of evidence that could arguably be relevant to whether Plaintiff met Defendant's legitimate expectations.[5] The first is a "WOW Comment Card" dated March 11, 2022, referring to employee "Dana," and stating "wow, you catch on so quickly and are so confident in your role. How did we ever survive without you? You are AWESOME and I love working with you." Exhibit 27 to Doc. [110] (paper exhibits on file with the Clerk of Court). On the same photocopied page, next to the image of the comment card, a handwritten note states: "This appears to be written by Dana herself & placed in her personnel file – Note the writing (letters & numbers[)] appear to be in Dana's handwriting." *Id.* Plaintiff provides screenshots of text messages with an unidentified individual in which she asked the individual to provide an account of the events of May 20, 2022, and "how was it like working with [Plaintiff] . . . ." Exhibit 9 to Doc. [110] at 154-57

---

[4] Defendant also argues that Plaintiff failed to satisfy the fourth prong of her prima facie case by showing circumstances that give rise to an inference of race discrimination. *See* Doc. [103] at 6-7; *Yang*, 79 F.4th at 964. Plaintiff's response to that argument suffers from the same defect as her response as to the second prong. Despite acknowledging and repeating the standard many times in her opposition, *see, e.g.*, Doc. [110] at 3, 8, 17, she nowhere points to any evidence of such circumstances. That failure appears to provide an independent ground for summary judgment on Plaintiff's race discrimination claim.

[5] In the spirit of construing a contested record in the light most favorable to a pro se non-movant, the Court considered whether the exhibits Plaintiff attached to her opposition might satisfy her evidentiary burden, even though she did not direct the Court to such evidence (or anything else) in opposing Defendant's argument for summary judgment. Still, the Court emphasizes that Plaintiff is subject to the same rules as represented parties. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). It was her responsibility to identify evidence that supports her position, not the Court's. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

(paper exhibits on file with the Clerk of Court). The individual describes Plaintiff as "tearful, which was unlike her regular professional and friendly attitude." *Id.* at 156.

Even if an unsigned note of unknown provenance or screenshots of text messages from an unknown sender were somehow to turn out to be admissible,[6] they would carry minimal evidentiary weight. *See, e.g.*, *Whitley v. Peer Rev. Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ("broad, conclusory statements by herself and others that she was doing her job adequately" were "insufficient to refute . . . specific evidence of her poor performance").

Because Plaintiff has not made a prima facie showing that she was meeting her employer's legitimate expectations, her race discrimination claim fails.

## II. <u>Plaintiff has not made a prima facie case of disability discrimination.</u>

*McDonnell Douglas's* prima facie case requirement also applies to disability discrimination claims. *See Bailey v. Amsted Indus. Inc.*, 172 F.3d 1041, 1044 (8th Cir. 1999). To make a prima facie case of disability discrimination, Plaintiff must show "(1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and (3) an adverse employment action due to her disability." *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010). Under the ADA,[7] "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, . . . and working." 29 C.F.R. § 1630.2(i).

Plaintiff cannot show that her termination was due to her disability because she did not disclose her disability until *after* her termination, in an email reporting to the Human Resources

[6] Plaintiff's only mention of either exhibit in her filings is a single reference to Exhibit 9 in a different context, Doc. [111-1] at 14, in response to which Defendant remarks on the hearsay issue but only in passing, Doc. [116] at 12 ("Putting aside the blatant hearsay problems . . . ."). As Defendant makes no clear objection to either exhibit's admissibility, the Court does not fault Plaintiff for failing to provide a response to such an objection and assumes the two exhibits are admissible for purposes of this Order. That should not be taken as a ruling that they would be admissible at a trial in this or any other matter.

[7] "The Rehabilitation Act incorporates the standards of the ADA to determine whether a violation has occurred." *Jones v. City of St. Louis*, 2025 WL 521806, at *3 (E.D. Mo. Feb. 18, 2025) (citing 29 U.S.C. § 794(d) and *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004)).

Director several grievances, including racial discrimination and harassment and "an ADA." Doc. [104-24] at 2; Doc. [104] ¶¶ 7, 58-59.[8] Plaintiff admits not disclosing a disability earlier, explaining that "at that point [she] was doing perfectly in [her] job." Doc. [104-3] at 155:11-13. "And upon being hired [she] did not need an accommodation." *Id.* at 155:16-17. But she claims Defendant was aware because she reported to her supervisor that she was having a panic attack on May 20th. Doc. [104-3] at 332:10-16. Construing that fact in the light most favorable to Plaintiff, it still affords no evidence that her employer knew Plaintiff suffered from a disability. A single panic attack is not, by itself, notice of "a physical or mental impairment that ***substantially limits one or more of the major life activities*** of such individual." 42 U.S.C. § 12102(1) (emphasis added). And if no one at her employer was aware that Plaintiff suffered from a disability until after her termination, that termination could not have been "due to her disability." *Norman*, 606 F.3d at 459; *see also Willis v. Barnes-Jewish Hosp.*, 2007 WL 107753, at *8 (E.D. Mo. Jan. 9, 2007).

Because Plaintiff has not made a prima facie showing that her termination was due to a disability, her disability discrimination claim fails.

**III. <u>Plaintiff has not made a prima facie case of retaliation.</u>**

A retaliation claim also requires Plaintiff to make a prima facie case. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir. 2006). To make a prima facie case of retaliation, Plaintiff must show (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two. *Williams v. UPS*, 963 F.3d 803, 807 (8th Cir. 2020). "[N]ot every complaint about conditions in the workplace, legitimate or otherwise, constitutes a protected activity[.]" *Lockridge v. HBE Corp*, 543 F. Supp. 2d 1048, 1060 (E.D. Mo. 2008) (quoting 45A Am.Jur.2D Job Discrimination § 242). A protected activity includes "opposing an act of discrimination made unlawful by Title VII . . . or participating in an investigation under Title VII." *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Unlawful employment practices include "discrimination with respect to 'compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex, or national origin.'" *Warren v. Kemp*, 79 F.4th 967, 974

[8] Although Plaintiff purports to dispute the allegations in ¶¶ 7, 58, and 59, her responses do not actually controvert the facts alleged by Defendant. *See* Docs. [111] at 2; [111-1] at 14. Those facts are therefore deemed admitted. Fed. R. Civ. P. 56(e)(2); E.D. Mo. L.R. 4.01(E).

(8th Cir. 2023). The Eighth Circuit has "rejected Title VII retaliation claims where the plaintiff opposed conduct other than a discriminatory employment practice." *Id.* "A causal relationship exists where 'the desire to retaliate was the but for cause of the adverse action.'" *Williams*, 963 F.3d at 807 (quoting *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1032 (8th Cir. 2013)).

Plaintiff fails to make either the first or third showings necessary for a prima facie case because she points to no evidence that she engaged in protected activity before her employment was terminated. It is undisputed that Plaintiff lodged various complaints before she was fired, but none of her pre-termination complaints alleged discrimination based on race or disability. *See* Doc. [104] ¶¶ 52, 62, 64, 75. For example, in her May 21st email, Plaintiff claims that her supervisor was intimidated by her business knowledge. Doc. [104] ¶ 64. And in messages sent May 23rd, Plaintiff complains about another employee "rudely" asking her a question. Doc. [117] ¶ 2. Complaints that are not based on being a member of a protected class are not protected activity. *See, e.g.*, *Smith v. Int'l Paper Co.*, 523 F.3d 845, 849 (8th Cir. 2008) (affirming dismissal because plaintiff did not "allege that he was retaliated against because of a complaint of racial discrimination or racial harassment").

Plaintiff does not deny that she never explicitly mentioned race or disability until after her termination, but she claims that comments she made to her supervisor about being "treated differently" implied that the differential treatment was because of her race. *See* Doc. [104] ¶ 76; Doc. [104-3] 257:24-258:6 ("A: I would never have to say based on my race. If I tell you you're treating me differently, then you should know."). That argument fails. *See, e.g.*, *Cohen v. Renaissance Grand Hotel*, 2007 WL 2080385, at *8 (E.D. Mo. July 16, 2007) (no retaliation where plaintiff was terminated after stating that "it should have been implied" that he was complaining of age or race-based discrimination when he complained of harassment, "because of [his] age and race"). Before Plaintiff can put a retaliation claim before a jury, she has to produce some evidence that she engaged in protected activity that could have been the basis for her termination, and she has produced none.

Because Plaintiff has not made a prima facie case that she engaged in protected activity prior to her termination or that the protected activity was the but-for cause of her termination, her retaliation claim fails.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [102], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Expedite Ruling on Defendant's Motion for Summary Judgment and Trial Setting, Doc. [120], is **DENIED**.

A separate Order of Judgment will issue herewith.

Dated this 30th day of September, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE